**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SAMMIE LEE WILSON, III,

        Petitioner,

vs.                              Case No.      3:12-cv-51-J-34MCR
                                                       3:07-cr-132-J-34MCR

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

    This case is before the Court on Petitioner Sammie Lee Wilson, III's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 1, Motion to Vacate)[1], filed on January 17, 2012, as well as Wilson's supplement to his Motion to Vacate (Doc. 6, Supplement to Motion to Vacate), filed April 12, 2012.  The United States filed a Motion to Dismiss, or Alternatively, Response in Opposition on March 1, 2013.  (Doc. 8, Government's Motion to Dismiss and Response in Opposition).  Wilson filed a Response to the Government's Motion to Dismiss on June 6, 2013.  (Doc. 11, Petitioner's Response).

    Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and

---

[1] Citations to Wilson's criminal case file, <u>United States of America v. Sammie Lee Wilson, III</u>, 3:07-cr-132-J-34MCR, are denoted as "Crim. Doc. ___."  Citations to Wilson's civil § 2255 case file, 3:12-cv-51-J-34MCR, are denoted as "Doc. ___."

determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (indicating that an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

For the reasons set forth below, Wilson's Motion to Vacate, Correct, or Set Aside his sentence is due to be **DENIED**.

## I.     Background

The Eleventh Circuit Court of Appeals' decision affirming Wilson's conviction and sentence laid out the facts of this case as follows:

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

> [On June 6, 2007,] Wilson was indicted for conspiracy to distribute 500 grams or more of cocaine and possession with the intent to distribute… Three months later, [following an unsuccessful motion to suppress evidence seized from an automobile search,] the government moved to enhance Wilson's sentence [pursuant to 21 U.S.C. § 851(a)(1)]. The government filed an information that "[o]n or about September 30, 2002, in the United States District Court, Middle District of Florida, Jacksonville Division,… Wilson was convicted of possession with intent to distribute more than 500 grams of cocaine." The information stated that Wilson faced an enhanced penalty for his conspiracy charge of a "minimum mandatory term of imprisonment of ten (10) years and up to life imprisonment, $4 million in fines, or both, and a term of supervised release of at least 8 years."
>
> Wilson entered an agreement with the government to plead guilty to conspiracy to distribute cocaine in exchange for the dismissal of the distribution charge. The plea agreement stated that "[p]ursuant to the Information ... filed" by the government, Wilson faced a sentence between 10 years and life imprisonment. The plea agreement provided that Wilson waived his right to appeal his sentence, subject to three exceptions: the sentence exceeded the "applicable guidelines range as determined by the Court"; the sentence exceeded the maximum statutory penalty; or the sentence violated the Eighth Amendment.
>
> At a change of plea hearing, a magistrate judge discussed with Wilson his right to appeal his sentence and the consequences of his decision to waive that right. Wilson verified that he had agreed, subject to the three exceptions, to waive his right to appeal his sentence, and he later acknowledged a second time that his right to appeal was "controlled by [the] appeal of sentence waiver provision." The magistrate judge twice discussed with Wilson the information filed by the government and the enhanced penalty Wilson faced, and Wilson verified three times during the plea colloquy that he understood the maximum penalty. The magistrate judge recommended that the district court accept Wilson's plea of guilty, and the district court later adjudged Wilson guilty of conspiracy to distribute cocaine.

United States v. Wilson, 376 F. App'x 972, 973 (11th Cir. 2010) (internal citations omitted).  Notably, Wilson's sentence-appeal waiver covered both collateral and direct appeals.  (Crim. Doc. 85, Plea Agreement at 9-10; Doc. 8-2, Plea Tr. at 15, 19-22, 55-56, 58-59).  Indeed, at the plea hearing, the Magistrate Judge explained the meaning of collateral appeals to Wilson, and Wilson assured the Court that he understood what it

meant, that he was waiving his right to collaterally attack his sentence, and that he had not been coerced into entering his plea.  See Plea Tr. at 19-24, 55-56, 58-59.   The Magistrate Judge further explained to Wilson that by pleading guilty he was facing a minimum mandatory sentence of ten years and up to life in prison.  Id. at 29, 32-34. Wilson stated he understood the potential sentence.  Id. at 33-35.   Additionally, the Magistrate Judge explained that nobody could determine Wilson's advisory sentencing guidelines range until completion of the Presentence Investigation Report (PSR).  Id. at 37-38.  Again, Wilson stated he understood.  Id.

Several months later, Wilson moved to withdraw his guilty plea. (Crim. Doc. 97, Motion to Withdraw Guilty Plea).   The Magistrate Judge prepared a Report and Recommendation on the motion in which he recommended its denial.  (Crim. Doc. 105, Report and Recommendation).  In doing so, the Magistrate Judge noted that Wilson had the benefit of the close assistance of counsel from an early stage, and that his case had been "comprehensively litigated."  Id. at 3.  The Magistrate Judge further found Wilson's claim that he misunderstood the 10-year mandatory minimum sentence as a maximum sentence to be "neither credible nor plausible," id. at 4, noting at least three occasions where either the Court or a prosecutor explained to Wilson that his potential sentence was a minimum of 10 years and up to life in prison.  Id. at 5.   Accordingly, the Magistrate Judge recommended denial of Wilson's Motion to Withdraw Guilty Plea, see id. at 8, and the Court adopted the Report and Recommendation as the opinion of the Court.  (Crim. Doc. 106, Order Adopting Report and Recommendation).

Because Wilson had a prior conviction for cocaine possession and a prior conviction for attempted manslaughter, see id., he qualified for sentencing as a career offender under the Sentencing Guidelines.  U.S.S.G. § 4B1.1(a) (2008) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.").  As such, based on his offense level and criminal history, and after receiving a three-level reduction for acceptance of responsibility, Wilson's advisory guidelines range under the Sentencing Guidelines was 262 to 327 months.  Wilson, 376 F. App'x at 973.  However, because of assistance Wilson provided to law enforcement while in custody under "John Doe" status[4], the government moved for a downward departure seeking a further two-level reduction of Wilson's offense level.  (Crim. Doc. 157, Motion to Recognize Defendant's Substantial Assistance).  The Court granted the government's motion, yielding a reduced guidelines range of 210 to 262 months.  Thereafter, the Court sentenced Wilson to 210 months, or 17.5 years' imprisonment, a sentence at the bottom of his reduced advisory guidelines range.  (Crim. Doc. 161, Judgment).

Wilson appealed his sentence to the Eleventh Circuit Court of Appeals, challenging the application of the § 851 enhancement notice, his classification as a

---

[4] Defendants are sometimes placed in "John Doe" status while in custody where, as here, the defendant provided information or assistance to law enforcement.  The object is to maintain the anonymity of the defendant in order to protect him or her from retaliation.

career offender, and the reasonableness of his sentence.  <u>Wilson</u>, 376 F. App'x 972.

The Eleventh Circuit affirmed the government's use of the § 851 enhancement on the

merits and dismissed Wilson's remaining arguments as barred by his sentence-appeal

waiver.  <u>Id.</u> at 974.  Wilson applied to the United States Supreme Court for certiorari

review, which the Court denied on November 4, 2011.  (Crim. Doc. 192, Denial of Writ

of Certiorari).  Wilson had one year from that date to apply for habeas relief.  <u>See</u> 28

U.S.C. 2255(f)(1).  Wilson filed his Motion to Vacate on January 17, 2012.  <u>See</u> Motion

to Vacate.  Because Wilson filed his Motion to Vacate less than one year after his

conviction and sentence became final, it is timely.  28 U.S.C. 2255(f)(1).

    In the Motion to Vacate, Wilson raises four challenges to his conviction and

sentence: (Ground One) that counsel was ineffective for not renewing a motion to

withdraw his guilty plea after the Supreme Court granted a petition for certiorari review

in <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), which Wilson believes would have altered the

resolution of his suppression motion; (Ground Two) that counsel and the government

denied him his right to a speedy trial; (Ground Three) that counsel was ineffective for

allowing Wilson to enter a guilty plea (a) in light of the Supreme Court granting certiorari

review in <u>Arizona v. Gant</u> and (b) because Wilson's sentence was based on a "defective

enhancement"; and (Ground Four) that the District Court's dismissal of his Rule 35

Motion for Reduction in Sentence was in error.  (Crim. Doc. 184, Pro Se Motion for

Reduced Sentence).[5]  Wilson later supplemented his Motion to Vacate with the claim

---

[5] Wilson also argued in his Response to the government's Motion to Dismiss, without providing any citation, that the United States Supreme Court ruled in 2012 that a defendant cannot waive the right to

that trial counsel was ineffective for pursuing an unsuccessful motion to suppress which caused the government to enhance his sentence.  See Supplement to Motion to Vacate.

## II.    Opinion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).  A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As noted, Wilson waived his right to direct and collateral appeals as part of his Plea Agreement, with limited exceptions not applicable here.[6]  See Plea Agreement at

---

raise ineffective assistance of counsel claims on collateral review, Petitioner's Response at 3, despite the Eleventh Circuit Court of Appeals indicating to the contrary.  See Marshall v. United States, 514 F. App'x 936, 937 n. 1 (11th Cir. 2013) (citing Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005)).
[6] Paragraph B.5 of the Plea Agreement provides:

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a)

9-10.  A petitioner's right to directly or collaterally challenge his sentence may be barred if he effectively waived that right pursuant to a plea agreement.  Williams v. United States, 396 F.3d 1340, 1341-42 (11th Cir. 2005), cert. denied, 546 U.S. 902 (2005) (holding that petitioner's valid sentence-appeal waiver made pursuant to a plea agreement precluded him from collaterally attacking his sentence later on a claim of ineffective assistance of counsel during sentencing); Boyle v. United States, 446 F. App'x 216, 219 (11th Cir. 2011) (per curiam); Thompson v. United States, 353 F. App'x 234, 235 (11th Cir. 2009) (per curiam) ("When a valid sentence-appeal waiver containing express language waiving the right to attack a sentence collaterally is entered into knowingly and voluntarily, it will be enforceable and serve to prevent a movant from collaterally attacking a sentence on the basis of ineffective assistance of counsel."); United States v. Garcia, 213 F. App'x 817, 821 (11th Cir. 2007) (per curiam). To be enforceable such that a plea agreement's sentence-appeal waiver will bar a § 2255 challenge, the waiver must be made knowingly and voluntarily.  See Williams, 396 F.3d at 1341 (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)). To establish that a waiver was made knowingly and voluntarily, the Government must

---

the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

Plea Agreement at 9-10.

demonstrate either that:   (1) the district court specifically questioned the petitioner concerning the sentence-appeal waiver during the plea colloquy, or (2) the record clearly shows that the petitioner otherwise understood the waiver's full significance.  Id.

Nevertheless, a sentence-appeal waiver will not bar certain Sixth Amendment ineffective assistance of counsel claims from being considered pursuant to § 2255. When a petitioner alleges an ineffective assistance of counsel claim that challenges the validity or voluntariness of the plea or waiver itself, such as a claim that counsel coerced or misadvised petitioner prior to entry of the plea, then the sentence-appeal waiver will not bar a court from hearing the merits of the claim.  See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam) (noting that despite a sentence-appeal waiver, collateral attack through an ineffective assistance claim is permitted when "the movant challenges the knowing and voluntary nature of the plea")[7]; see also Patel v. United States, 252 F. App'x 970, 971, 974-75 (11th Cir. 2007) (per curiam) (finding that the district court erred in dismissing, based on a sentence-appeal waiver, petitioner's claim that counsel misadvised him prior to pleading guilty); Cowart v. United States, 139 F. App'x 206, 207-08 (11th Cir. 2005) (per curiam) (holding that a sentence-appeal waiver that only expressly limits a petitioner from collaterally challenging his "sentence"

---

[7] In Baird, the Eleventh Circuit addressed the merits of the petitioner's ineffective assistance claim challenging the validity of both his plea and sentence-appeal waiver.  See Baird, 445 F. App'x at 253-54. The petitioner alleged that he unknowingly and involuntarily entered a guilty plea due to his counsel's failure to properly explain to him the terms of his waiver in his plea agreement.  Id.  The court held that the petitioner was not entitled to relief because he did not show sufficient prejudice, namely, that there was a reasonable probability he would not have pleaded guilty if counsel had explained the terms of the waiver.  Id. (finding that the petitioner's decision to plead guilty was primarily driven by the government's agreement not to forfeit his property, and that counsel's explanation of the waiver would not have deterred his plea.).

does not bar an ineffective assistance claim that challenges the validity of his plea or the sentence-appeal waiver itself).   Therefore, despite the presence of a sentence-appeal waiver, the Court must address the merits of a § 2255 petitioner's claim of ineffective assistance if it challenges the validity of the plea or waiver.  Id.

A review of the record before the Court establishes that the Magistrate Judge specifically questioned Wilson concerning the sentence-appeal waiver contained in his Plea Agreement, and that Wilson stated that he understood the full significance of his choice.  Wilson signed the Plea Agreement, which stated in unambiguous terms that he waived his right to attack his sentence through either direct or collateral appeals.  Plea Agreement at 9-10.  At the plea hearing, Wilson stated under oath that he had read his Plea Agreement in full and that he understood it before signing.  See Plea Tr. at 54-55. Additionally, the Magistrate Judge thoroughly explained to Wilson the meaning of a collateral appeal, ensured that Wilson understood the meaning of "collateral appeals", and asked Wilson whether he understood that he was waiving his right to attack his sentence through § 2255.  Id. at 19-24.  Wilson responded affirmatively.  Id. at 19-20, 22, 24.  The Magistrate Judge also specifically informed Wilson that he was "never going to be able to challenge this conviction on any basis in any way, shape, manner or form in either a direct appeal or collateral attack later.  You're giving that up now and you're giving that up forever."  Id. at 24.  Wilson repeatedly affirmed that he understood, and that he knowingly and voluntarily waived his appeals rights.  Id. at 19-24.  Finally, the Magistrate Judge questioned whether Wilson's plea was knowing and voluntary,

and Wilson affirmed that it was.  Id. at 53-56, 58-60.  In sum, the record is replete with evidence that Wilson freely, intelligently, and voluntarily waived his right to appeal his conviction and sentence either directly or collaterally.  Indeed, on review of the record the Eleventh Circuit Court of Appeals found "[t]he record establishes that Wilson knowingly and intelligently waived his right to appeal his sentence."  Wilson, 376 F. App'x at 974 (citing United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)).

As a consequence of Wilson's sentence-appeal waiver, the Court need only consider Wilson's claims to the extent they bear on the knowing and voluntary nature of his entry into the Plea Agreement itself, as a sentence-appeal waiver will not preclude such arguments.  See Baird, 445 F. App'x at 254.  If such claims fail on the merits, then any remaining claims unrelated to the validity of the plea agreement will be barred.[8] Wilson raises two ineffective assistance claims based on counsel's advice prior to entering into the Plea Agreement.  Because these claims arguably relate to whether Wilson made an informed decision to enter a guilty plea pursuant to the Plea Agreement, the Court will address these claims on the merits.  The Court will then address Wilson's remaining ineffective assistance, speedy trial, and Rule 35 motion claims.

---

[8] Certain other claims, such as those challenging a court's subject-matter jurisdiction, survive a valid appeal-waiver because they cannot be waived, forfeited, or defaulted.  United States v. Cotton, 535 U.S. 625, 630 (2002).  No such claim is presented here, however.

### A. Ineffective Assistance of Counsel

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's]

ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### 1.  Advising Wilson to Plead Guilty with a "Defective Enhancement"

Wilson contends that his trial counsel rendered ineffective assistance by advising Wilson to enter into a Plea Agreement where the potential sentence involved a "defective enhancement."   Motion to Vacate at 6-7.   Because this claim could be construed as alleging that trial counsel misadvised Wilson with regard to entering into the Plea Agreement in the first place, the Court will not treat this claim as barred by the sentence-appeal waiver.  See Baird, 445 F. App'x at 254.   Nevertheless, the claim fails on the merits.

To succeed on a claim that a guilty plea pursuant to a plea agreement was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that trial counsel's advice "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted).   A petitioner has the burden of proving prejudice. Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000).

Upon review of the record, the Court determines that Wilson has shown neither deficient performance nor prejudice because the government's sentencing enhancement was not "defective" as a matter of law.  Wilson, 376 F. App'x at 974.  As the Eleventh Circuit noted on direct appeal, Wilson had a 2002 felony conviction for

13

possession of cocaine with intent to distribute.  Id. at 973; see also United States v. Sammie Lee Wilson, III, 3:02-cr-93-J-21TEM (M.D. Fla. 2002).   This conviction for possession of cocaine with intent to distribute rendered him eligible for the ten years-to life sentence mandated by 21 U.S.C. § 841(b)(1)(B)(viii) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment…").  Moreover, the Eleventh Circuit affirmed the government's use of the enhancement under 21 U.S.C. § 851 on the merits, stating that "the information clearly satisfies the procedural and substantive requirements of section 851."  Wilson, 376 F. App'x at 974.  Therefore, Wilson cannot show that trial counsel unreasonably advised him to accept a "defectively enhanced" sentence.  The United States had authority to seek, and the Court had authority to impose, an enhanced sentence based on Wilson's prior conviction.  See id.  There being no defect in the enhancement, Wilson's claim that counsel gave professionally unreasonable and prejudicial advice fails.

2. **Advising Wilson to Plead Guilty Despite the Grant of Certiorari Review in Arizona v. Gant**

Wilson asserts that trial counsel provided ineffective assistance by advising him to enter a guilty plea pursuant to the Plea Agreement despite the fact that the Supreme Court had granted a petition for certiorari review in Arizona v. Gant, 556 U.S. 332 (2009).  Wilson believes the Supreme Court's decision in Gant would have changed the resolution of his suppression motion and given him a viable issue on appeal.  Motion to

Vacate at 4.[9]   While the Court will construe this claim as arguing that counsel misadvised Wilson regarding entering his plea, and thus not be barred by the sentence-appeal waiver, the claim still fails on the merits.  Indeed, the record conclusively refutes Wilson's claim because the record shows that Wilson entered his plea pursuant to the Plea Agreement <u>before</u> the Supreme Court granted certiorari review in <u>Gant</u>.  Wilson pled guilty on October 31, 2007.  (Crim. Doc. 86, Report and Recommendation on Acceptance of Guilty Plea).  The Supreme Court did not grant certiorari in <u>Gant</u> until February 25, 2008.  552 U.S. 1230 (2008).  This claim is therefore meritless.

Wilson cannot argue that his counsel deficiently advised him to plead guilty based on the potential that the Supreme Court might decide favorably a case that the Supreme Court had, in fact, not yet even agreed to hear.  At the time counsel advised Wilson to enter a guilty plea pursuant to the Plea Agreement, the Court had not yet granted certiorari review in <u>Gant</u>.  Wilson faced substantial penalties.  By entering into the Plea Agreement he obtained the benefit of a three-level reduction under the

---

[9] Law enforcement seized the evidence against Wilson following a stop and search of his automobile. Wilson believes the <u>Gant</u> decision, which redefined the parameters of the automobile search-incident-to-arrest doctrine, would have given him a successful appellate issue.  This claim fails on the merits.  First, Wilson could not show that his counsel was deficient under <u>Strickland</u>, because trial counsel could not reasonably be expected to have predicted the outcome of <u>Gant</u>.   Second, Wilson could not show prejudice because the search of his car would have been legal even after <u>Gant</u>, which permits automobile searches if police have independent probable cause.   <u>Gant</u>, 556 U.S. at 347.  The Magistrate Judge presiding over Wilson's suppression hearing determined that the officers who searched Wilson's car did have probable cause. (Crim. Doc. 59, Report and Recommendation to Deny Motion to Suppress at 18). Third, Wilson could not show prejudice because even if the search of his car would have been illegal under <u>Gant</u>, the evidence would not necessarily have been excluded.  <u>See Davis v. United States</u>, 131 S. Ct. 2419 (2011).  In <u>Davis</u>, the Supreme Court refused to apply the exclusionary remedy to evidence seized from an automobile search conducted <u>before</u> <u>Gant</u> was decided, reasoning that the exclusionary remedy was not warranted where police officers relied on then-binding precedent to conduct an automobile search. <u>Id.</u> at 2428-29.  Thus, even assuming the search of Wilson's car would be illegal after <u>Gant</u>, as in <u>Davis</u>, exclusion of the evidence would have been unwarranted.

Sentencing Guidelines for acceptance of responsibility, and an additional two-level reduction for his cooperation. These downward adjustments resulted in a substantial reduction of Wilson's advisory sentencing guidelines range.  The Plea Agreement gave Wilson the further benefit of dismissing Count Two of the Indictment, which charged him with willfully and intentionally possessing, causing to be possessed, and aiding and abetting a codefendant in the possession of cocaine with intent to distribute.  <u>Compare</u> Plea Agreement at 1 <u>with</u> Crim. Doc. 1, Indictment at 2.  Under these circumstances, counsel's advice to Wilson was reasonable given the then-existing state of the law. Indeed, Wilson has failed to show either that his counsel's performance fell outside the wide range of professionally competent assistance or that, but for counsel's assistance, he would not have pled guilty.

### 3. Not Renewing Wilson's Motion to Withdraw Guilty Plea

Wilson argues that trial counsel gave ineffective assistance because he did not renew Wilson's motion to withdraw his guilty plea after the Supreme Court granted certiorari review in <u>Gant</u>.  This argument, however, does not relate to whether Wilson made a knowing and voluntary decision to plead guilty pursuant to the Plea Agreement or to waive his right to appeal or challenge his conviction and sentence.  Rather, Wilson thinks his trial counsel should have predicted how the Supreme Court would rule in <u>Gant</u> after it granted certiorari review, renewed a motion to withdraw Wilson's guilty plea well <u>after</u> he entered it, and risk the loss of the government's plea offer.  Because this argument is unrelated to whether Wilson knowingly and voluntarily entered into the Plea

Agreement, including the sentence-appeal waiver, it is barred by Wilson's waiver. <u>See</u> <u>Williams</u>, 396 F.3d at 1341-42.

Even if this claim was not barred, it is the very type of second-guessing-in-hindsight that <u>Strickland</u> warned the courts not to undertake.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>Strickland</u>, 466 U.S. at 689.  Wilson's counsel cannot be faulted for not predicting the outcome of a Supreme Court case, or for his unwillingness to jeopardize Wilson's plea agreement by attempting to withdraw the plea a second time.

### 4.  Advising Wilson to Pursue an Unsuccessful Motion to Suppress

After filing his initial Motion to Vacate, Wilson filed his Supplement to Motion in which he argues that trial counsel provided erroneous legal advice when he allegedly recommended that Wilson decline the government's plea offer (without a § 851 enhancement) and pursue a motion to suppress.  <u>See</u> Supplement to Motion to Vacate at 2.  Wilson argues trial counsel should have known the motion to suppress would be unsuccessful, and that an unsuccessful motion to suppress would cause the government to enhance Wilson's sentence.  As such, Wilson blames his attorney for the government's decision to enhance his sentence after the motion failed.  <u>See</u> <u>id.</u>

Because Wilson's argument that trial counsel should not have pursued a motion to suppress is entirely unrelated to the validity of Wilson's Plea Agreement, it is barred

by his sentence-appeal waiver.   See Williams, 396 F.3d at 1341-42.   Moreover, the record contradicts Wilson's contentions.   Two to three months after Wilson pled guilty, relations between Wilson and his attorney frayed.   (See Crim. Doc. 94, Pro se Letter). Trial counsel then moved to withdraw.   (Crim. Doc. 110, Motion to Withdraw as Counsel).   In the Motion to Withdraw as Counsel, trial counsel explained that he was frustrated with Wilson's insistence on pursuing a motion to suppress against his professional advice.   Id. at 1.   Counsel stated that he feared the government would enhance Wilson's sentence if the motion failed.   Id.   The motion did fail, and the government did enhance Wilson's sentence.   (Crim. Doc. 59, Report and Recommendation to Deny Motion to Suppress; Crim. Doc. 60, Information Establishing Prior Conviction).   Contrary to Wilson's claim, however, it appears Wilson himself insisted on pursuing the motion to suppress.   Motion to Withdraw as Counsel at 1.   On this record, Wilson has failed to show that his attorney behaved in the professionally unreasonable manner that he alleges under Strickland's deficiency prong.   Strickland, 466 U.S. at 687.

Even if it was trial counsel who insisted on pursuing the motion to suppress, this is yet another second-guessing-in-hindsight claim that Strickland warned against.   Id. at 689.   The Court in this case cannot say retrospectively that a decision to pursue the motion to suppress "fell outside the wide range of professional competence."   Weeks, 26 F.3d at 1036.   The Magistrate Judge presiding over Wilson's suppression hearing acknowledged that the argument was "a close one."   Report and Recommendation to

Deny Motion to Suppress at 18. Counsel may have felt he could spare Wilson from a conviction by excluding the evidence against him, and that he had reasonable grounds to move for suppression. Indeed, the Magistrate Judge seemed to suggest that the motion had some merit. Thus, even assuming trial counsel did insist on pursuing suppression, the Court cannot say that counsel behaved in a professionally unreasonable manner simply because the outcome for Wilson proved unfavorable in the end.

### B. Speedy Trial and Wilson's Rule 35 Motion to Reduce Sentence

In Ground Two of Wilson's Motion to Vacate, he contends that the United States and trial counsel denied him his right to a speedy trial by keeping him in custody under "John Doe" status for two months. Motion to Vacate at 6-7. Additionally, in Ground Four Wilson challenges the Court's dismissal of his Rule 35 motion for a sentence reduction. (Crim. Doc. 184, Rule 35 Motion for Reduced Sentence; Crim. Doc. 185, Order Denying Rule 35 Motion). Because neither claim undermines the knowing and voluntary nature of Wilson's plea agreement, both are barred by his waiver of collateral appeals. See Williams, 396 F.3d at 1341-42.[10]

### III.  Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Wilson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of

---

[10] The Court also briefly notes that Wilson waived his right to challenge any speedy trial violation by entering a guilty plea. Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) (citing United States v. Saldana, 505 F.2d 628 (5th Cir. 1974)). Regarding Wilson's Rule 35 claim, he has already received the benefit of the government's motion for a downward departure and a reduced sentence, as discussed earlier in this Order. See supra pp. 5-6, 16.

appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2). To make this substantial showing, Wilson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1.  Petitioner Sammie Lee Wilson III's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Doc. 1, Motion to Vacate) is **DENIED**.

2.  The Clerk shall enter judgment in favor of the United States and against Sammie Lee Wilson III, and close the file.

3.  If Wilson appeals the denial of the petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of July, 2014.

MARCIA MORALES HOWARD
United States District Judge

lc19
Copies:
Counsel of Record
pro se party